[L.A. No. 30233. In Bank. June 21, 1974.]

ROGER COSSACK et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

728

**COUNSEL**

Roger Arnebergh and Burt Pines, City Attorneys, George J. Franscell and John T. Neville, Assistant City Attorneys, W. T. Maskey and Burk M. Weidner, Deputy City Attorneys, and Edward M. Davis, for Defendants and Appellants.

Warren I. Wolfe for Plaintiffs and Respondents.

Ball, Hunt, Hart, Brown & Baerwitz, Edmund G. Brown, John R. Mc-Donough, Louis Lawson and Rufus King as Amici Curiae on behalf of Plaintiffs and Respondents.

**OPINION**

**McCOMB, J.**—Defendants appeal from a judgment in favor of plaintiffs in an action in which plaintiffs alleged that section 43.05.1 of the Los Angeles Municipal Code is unconstitutional and void and asked for a judgment so declaring and enjoining defendants from enforcing it.[1]

*Facts:* In 1939, the voters of the City·of Los·Angeles approved, by initiative measure, the legislation which is the subject of this action.[2]

---

[1]Plaintiffs are an operator of coin-operated amusement games for over 22 years, an owner of a modern family-style bowling center, and the Assistant Dean of the UCLA School of Law. The latter sometimes patronizes the type of establishments operated by the other two plaintiffs.

[2]Section 43.05.1 of the Los Angeles Municipal Code reads, as follows: "A. Definitions. For the purposes of this section, the following terms are defined as hereinafter set forth:

"1. 'Pin Game': Any table, cabinet or mechanism equipped for the playing of any game whereby any marble, ball, pellet or other moving object is propelled, released, rolled or shot along, over or above a surface set with pins, pegs or other obstructions or irregularities which deflect or impede the course of the moving object or which may divert or direct it beyond the control of the player.

"2. 'Marble Game': Any table, cabinet or stand equipped for the playing of a game whereby marbles or balls are, with the aid of a mechanical plunger or other affixed device, propelled, released, shot or rolled so as to drop or come to a rest in

Upon approval thereof by the voters, the city adopted the measure by ordinance; and it was placed in the Los Angeles Municipal Code as section 43.05.1 under article 3, which is entitled "Gambling, Fraud and Deceit." The measure is still in full force and effect, not having been amended or repealed.

Plaintiffs desire to place, or to have placed, in operation in certain business locations coin-operated amusement games, which technically

holes, slots, cups or traps, resulting in a score or tally being electrically or otherwise registered or shown which score or tally depends upon the course followed or point reached by the marble or ball or upon the contact points touched by it along its course, or upon any combination of such factors.

"3. The phrase 'any game similar to a marble game' shall mean: 'Balley-Alley' and any other miniature mechanical bowling game device, by whatever name called; any table, cabinet or mechanical device equipped for the playing of any game whereby any marble, ball, pellet or any moving object is propelled, rolled, shot or released toward a goal, pin, set of pins, or other objective by means of any plunger, ejector, mechanical bat, mechanical hand or by means of any other striking or releasing mechanism which is affixed or attached to the table or cabinet, or which is an integral part of the mechanical device or which is mechanically manipulated, controlled or guided, and which game is so contrived that, at the conclusion of the operation or play thereof the score or result of play thereof is visible or otherwise discernible so as to permit or make practicable the playing off or awarding of a prize or reward upon the operation or play of the game.

"4. 'Claw, Hook, or Grab Machine': Any amusement machine or device so designed that articles placed or heaped therein for the purpose of the game may be grabbed, hooked, or otherwise displaced, recovered or removed by the operation of any contrivance simulating in miniature a power-shovel, clam-shell, dragline or similar excavating tool or machine.

"5. 'Horse Racing Machine': Any mechanically operated amusement machine or device contrived to simulate in miniature the running of a horse race or any other race run by beasts, humans or machines, or which is contrived to put in motion any number of objects or symbols which then do, or appear to, run or move against each other in the manner of a miniature race, or which is designed to represent by symbols, the running of any race and the order of the finish thereof.

"B. It shall be unlawful for any person to keep, maintain or possess in any place of business or in any place of public resort:

"1. Any pin game, any marble game or any game similar to a marble game, any claw, hook or grab machine or any horse race machine, the operation of which game or machine is controlled, permitted or made available by placing therein a coin, plug, disk, key or token, or which is let for use, operation or play upon the payment or delivery of anything of value therefor, or upon the making of any purchase;

"2. Any mechanical device or mechanically operated contrivance for the playing of any game of chance, the use or operation of which is controlled, permitted or made available by placing therein any coin, plug, disk, key, or token, or which is let for use, operation or play upon the payment or delivery of anything of value therefor, or upon the making of any purchase.

"C. The provisions of this section shall not apply to the keeping, possessing or exhibiting of any such mechanical contrivance or device at or in any mercantile store in which such mechanical contrivances or devices are kept solely for sale and which mechanical contrivances or devices members of the public are not permitted or allowed to operate, manipulate or play except as incident to a demonstration for the purpose of sale."

meet the definition of "pin game" contained in section 43.05.1 of the Los Angeles Municipal Code, but which were shown by the uncontradicted evidence to be predominantly games of skill.

The trial court made detailed findings with respect to the type of machines proposed to be placed in operation.[3] It then found, supported by substantial evidence, as follows: "19. That for the two decades prior to 1948, the pin ball games or machines, pin games, marble games, and horse race machines then in existence, as described in the Pin Ball Ordinance, were all devices or games predominantly of chance.

"20. In 1948, 'flippers' were developed and incorporated in pin ball games and machines. Since then, with the addition of flippers, the games became known as flipper games and were then and still are games predominantly of skill."

---

[3] The trial court found, as follows: "16. The 'skill games' referred to herein may be generically described as follows: each is a coin-operated, electro-mechanical table game whereby balls or other objects are propelled or motivated over a playing field under glass for the purpose of interdicting various targets and play features, the score being automatically registered upon a scoring device; each neither issues, nor grants, the right to receive any merchandise, tokens or anything of value; each costs at least several hundred dollars to purchase, but is operable for ten cents to twenty-five cents a play; each is a game predominantly of skill, offering and providing only recreation, leisure and amusement; and each depends upon the same factors to develop skill and proficiency, whether or not additional games are received as a bonus or for high score, namely: eye-hand coordination, depth perception, reflexes and muscular control, concentration, understanding the rules and play, and practice.

"18. With respect to flipper games, Williams' 'Stardust' (Exhibit 2) and Gottlieb's 'Four Square' (Exhibit 3) are fairly representative, and are generally described as follows: They consist of a rectangular table approximately 22x50 inches mounted on four legs. The playing surface is a glass-covered inclined plane, inclined upward away from the player, onto which the player propels a ball. A square back board is mounted vertically at the back end of the table for the purpose of registering the player's score, which is done automatically and electrically. To activate the machine, the player inserts a coin, usually a dime, or a quarter for the three plays, which automatically animates the playing field and backboard, and mobilizes the mechanism for the first ball to be shot onto the playing surface. A player is allotted five shots, and may be allotted additional shots (or games) in the event a certain numerical score is achieved, or by bonus. The player retracts a calibrated spring-loaded plunger which then propels the ball to the upper and far end of the playing field whereupon it descends down the plane by gravity through various indicated targets and play features. On each side of the playing surface, near the bottom of the incline, there is a small flipper (mechanical bat) which the player may actuate, by pressing a button, to strike the ball back up into the field of play again. Then as the ball descends, unless 'flipped up,' it rolls to the bottom and goes out of play. Before the ball goes out of play, and as it contacts various targets and play features, it causes various electrical contacts, each of which increases the numerical score that is instantaneously indicated on the scoring counter on the back board. Also, each time a contact is made, the machine emits a sound like a bell or a gong of various pitches, and also flashes lights, all of which adds to the excitement and enjoyment experienced by the player."

In its conclusions of law, the trial court determined that both subdivision 1 and subdivision 2 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code pertain on their faces, and are applied, to games predominantly of chance and that both subdivisions are void under article XI, section 7, of the California Constitution.[4]

The trial court also concluded that flipper games and other skill games (as described in finding 16) are capable of being licensed and permitted in the City of Los Angeles under section 21.63 of the Los Angeles Municipal Code (pertaining to "amusement machines"), under section 103.101 of the Los Angeles Municipal Code (pertaining to "arcades"), and under section 103.116 of the Los Angeles Municipal Code (pertaining to "games of skill and science").

In further conclusions of law, the trial court determined that section 43.05.1 of the Los Angeles Municipal Code is unconstitutional on specified additional grounds, including the ground of a denial of the equal protection of the laws, pointing out that the section establishes an invidious discrimination between flipper games and (a) other skill games and (b) other recreational and sporting activities which are predominantly of skill.

Judgment was entered declaring section 43.05.1 of the Los Angeles Municipal Code unconstitutional and void and enjoining defendants from enforcing it, directly or indirectly.

 Question: *Did the trial court properly determine that both subdivision 1 and subdivision 2 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code pertain to games of chance and hence have been preempted by state laws?*

*Yes.* Subdivision 2 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code clearly prohibits the possession of any "mechanical device . . . for the playing of any game of chance"; and the parties stipulated that that subdivision is void because it occupies a field preempted by state law. (See *In re Lane,* 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].)

In the legislation in which the Legislature preempted the field respecting gambling machines or devices, it specifically provided that amusement

---

[4]Article XI, section 7, of the California Constitution reads: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

In 1950, the Legislature adopted extensive legislation with respect to gambling machines or devices. (See Pen. Code, § 330b et seq.)

machines or devices which are predominantly games of skill were not included;[5] and it was stipulated by the parties hereto that the state has not preempted the field of coin-operated games of skill. (Cf. *In re Hubbard,* 62 Cal.2d 119, 125 [4] [41 Cal.Rptr. 393, 396 P.2d 809].)

Under the circumstances, if the machines here in question are games predominantly of chance, they are clearly prohibited under the legislation adopted by the state. If they are games predominantly of skill, they are not prohibited by the state legislation and hence could legally be placed in operation and used, as desired, unless they are validly prohibited by subdivision 1 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code.

Whether a game is a game of skill or a game of chance depends upon which factor predominates, and this is a fact question for the trial court. (*Knowles* v. *O'Connor,* 266 Cal.App.2d 31, 33 [71 Cal.Rptr. 879]; *People* v. *Mason,* 261 Cal.App.2d 348, 354 [68 Cal.Rptr. 17].) In the present case, the trial court found, supported by substantial evidence, that the games in question are games predominantly of skill. In addition, the Attorney General has indicated that although pinball machines which are predominantly games of chance are prohibited by section 330b of the Penal Code, pinball machines equipped with flippers, permitting manipulation of the ball by the player, are predominantly games of skill. (37 Ops. Cal.Atty.Gen. 126, 129-130.)

Subdivision 1 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code, it will be noted, refers to the games defined in detail in paragraph A and does not designate them "games of chance." ■ However, as stated in *People* v. *Superior Court,* 70 Cal.2d 123, 132 [7] [74 Cal.Rptr. 294, 449 P.2d 230]: " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] ■ Statutes

---

[5]Thus, section 330b, subdivision (4), of the Penal Code provides: "It is expressly provided that with respect to the provisions of Section 330b only of this code, pin ball, and other amusement machines or devices which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not intended to be and are not included within the term slot machine or device as defined in said Section 330b of this code."

Likewise, section 330.5 of the Penal Code, which exempts coin-operated music machines and vending machines, provides, in part: ". . . and it is further expressly provided that with respect to the provisions of Sections 330.1 to 330.4, inclusive, only, of this code, pin ball, and other amusement machines or devices which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not intended to be and are not included within the term slot machine or device as defined within Sections 330.1 to 330.4, inclusive, of this code."

should be construed so as to be given a reasonable result consistent with the legislative purpose." (See also *Select Base Materials* v. *Board of Equal.*, 51 Cal.2d 640, 645 [335 P.2d 672].) Similarly, it was said in *Alford* v. *Pierno,* 27 Cal.App.3d 682, 688(6) [104 Cal.Rptr. 110], "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." It was further said in *Alford,* "The apparent purpose of a statute will not be sacrificed to a literal construction." (P. 688(7).)

As hereinabove pointed out, the enactment was placed in the municipal code under article 3, which is entitled, "Gambling, Fraud and Deceit." That article prohibits various forms of gambling, such as chain letter schemes, gambling with dice or cards, playing billiards or pool for money or things of value, using telegraph or telephone lines for book-making, and lotteries. And the licensing of skill games is specifically authorized under other parts of the municipal code.

More significantly, it is clear that at the time the ordinance was adopted all the games referred to therein were purely games of chance. Prohibiting machines or devices for playing pin ball or marble games of *skill* could not have been the objective of the electorate, since they did not come into existence until almost 10 years later.

The trial court in its memorandum of opinion aptly stated: "[N]owhere in subdivision 1 of paragraph B of the Pin Ball Ordinance is there any mention whatever made of gambling, hazard or chance. This poses the question as to what was the legislative intent in placing both subdivisions, 1 and 2, in paragraph B of the Pin Ball Ordinance?

"The answer to this question lies in recalling the time when this ordinance was enacted—1939. At that time the flipper-type of machines and all of the other kinds of machines affording the player substantial control over the play thereof were not yet in existence. All of the various pin games, marble games, and slot machines then in use operated purely on the basis of chance, and since this means gambling, obviously it was the intention of the electorate to prohibit this form of gambling. For this reason the ordinance undertook first, to describe and define in paragraph A all of the various types of games, such as 'Pin Games,' 'Marble Games,' games similar to marble games, such as 'Bally-Alley,' 'Claw, Hook and Grab Machines,' and 'Horse Racing Machines,' and then second, to prohibit them in subdivision 1 of paragraph B. Then, out of an abundance of caution and upon the premise that there may be some other mechanical devices or machines used for gambling, and whose names they did not

know, subdivision 2 was added as a 'catch-all' so as to include within its broad prohibition any other games of 'chance.' "

Accordingly, we hold that subdivision 1 of paragraph B of section 43.05.1 of the Los Angeles Municipal Code pertains only to games of chance and does not prohibit the games here in question.

■ In any event, however, even if it were concluded that subdivision 1 of paragraph B was intended to proscribe games of skill, and hence would prohibit the games of skill sought to be provided or used by plaintiffs, it would be unconstitutional, because it would violate the equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 11, of the California Constitution, since there would be an arbitrary discrimination against the limited number of games of skill falling within its terms.

In *Brown* v. *Merlo,* 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212], this court said: "As the United States Supreme Court recently phrased the federal constitutional standard: 'The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. *A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."*' [Citations.] Thus, when a statute provides that one class shall receive different treatment from another, our constitutional provisions demand more 'than nondiscriminatory application within the class . . . establish[ed] . . . . [They] also [impose] a requirement of some rationality in the nature of the class singled out.' "

The case of *Looff* v. *City of Long Beach,* 153 Cal.App.2d 174 [314 P.2d 518], is particularly apropos to the present case. There, a Long Beach ordinance requiring a permit with respect to some types of games of skill while exempting others was declared invalid, the Court of Appeal stating: " 'It is . . . well settled that a statute makes an improper and unlawful discrimination if it confers particular privileges upon a class arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privileges granted and between whom and the persons not so favored no reasonable distinction or substantial difference can be found justifying the inclusion of the one and the exclusion of the other (5 Cal.Jur. 825, and cases cited).'

"The classification by the Legislature 'must not be arbitrarily made for

the mere purpose of classification, but must be based upon some distinction, natural, intrinsic, or constitutional, which suggests a reason for and justifies the particular legislation. That is to say, not only must the class itself be germane to the purpose of the law but the individual components of the class must be characterized by some substantial qualities or attributes which suggest the need for and the propriety of the legislation.

"· · · · · · · · · · · · · · · ·

"It thus appears obvious from the evidence that the same factors develop skill in [plaintiff] McLain's balloon-dart game, [plaintiff] Turner's knife-throwing game and the exempt games of archery, baseball, basketball and quoits, these latter games being excluded from the application of the ordinance since they are specifically found to be 'games in which chance does not predominate in determining the result thereof.' Fundamentally these games are the same. A classification which rests upon no reasonable basis and which bears no substantial relation to a legitimate purpose to be accomplished is purely arbitrary and patently discriminatory. We find no reasonable distinction or substantial difference justifying the classification in section 4 of the ordinance." (Pp. 181-184 of 153 Cal. App.2d.)

The judgment is affirmed.

Wright, C. J., Tobriner, J., Mosk, J., and Kaus, J.,* concurred.

**BURKE, J.**—I dissent. As the majority acknowledge, the state has not preempted the entire field of games and gambling. (See *In re Hubbard,* 62 Cal.2d 119, 124-125 [41 Cal.Rptr. 393, 396 P.2d 809].) Accordingly, as the majority concede, local government properly may regulate pinball machines if, and to the extent that, such machines are predominantly games of skill rather than chance. (*People* v. *Mason,* 261 Cal.App.2d 348 [68 Cal.Rptr. 17]; see Pen. Code, §§ 330.5, 330b, subd. (4).)

The trial court found that the pinball games at issue are predominantly games of skill, and the majority does not dispute this finding. Therefore, it would seem to follow that the challenged ordinance must be upheld unless (1) the ordinance was not intended to regulate these pinball games, or (2) the ordinance improperly discriminates against such games.

1. *Intent of Ordinance*—The ordinance clearly was intended to apply to pinball games such as those described in the trial court's findings (see

*Assigned by the Chairman of the Judicial Council.

maj. opn., *ante,* p. 730, fn. 3). Both the "skill games" described in finding 16 and the "flipper games" described in finding 18 bear a close resemblance to the "pin game," "marble game," and "any game similar to a marble game" defined in the ordinance (see maj. opn., *ante,* pp. 728-729, fn. 2). The majority confidently assert that "it is clear that at the time the ordinance was adopted all the games referred to therein were purely games of chance. Prohibiting machines or devices for playing pin ball or marble games of *skill* could not have been the objective of the electorate, since they did not come into existence until almost 10 years later." (*Id., ante,* pp. 728-729.) Yet a reading of the various games described in the ordinance makes it evident that *both* games of skill and of chance were sought to be regulated.

Thus, in addition to "pin" and "marble" games, the ordinance also regulates "claw, hook or grab" machines, in which the player attempts to displace or recover various articles by the operation of a miniature power-shovel or similar excavating machine, a game which by reason of its primary reliance upon manual dexterity would appear to be a game of *skill,* not chance. Moreover, even prior to the invention of the "flipper" in 1948, pinball games reasonably could have been characterized as games of skill for, as noted by Justice Fleming in the opinion he prepared for the Court of Appeal in this case, ". . . tilt and body english have been factors in coin-operated pinball games since time immemorial, as has the variable velocity with which the player's marbles are propelled."

In any event, regardless of the nature of pinball games in 1939 when the ordinance was passed, it seems evident that the ordinance by its terms would apply to the pinball games at issue herein, which games are concededly games of skill. Therefore, the ordinance properly may regulate those games unless an unlawful discrimination against those games has been created.

2. *Discrimination Against Pinball Games*—The majority assert that no reasonable distinction exists between the pinball games proscribed by the ordinance, and such games as archery, baseball, basketball and quoits. (See *Looff* v. *City of Long Beach,* 153 Cal.App.2d 174 [314 P.2d 518] [invalidating ordinance regulating "balloon-dart" game and "knife-throwing" game].) To the contrary, I see several bases upon which to uphold the ordinance. First of all, pinball and other coin-operated games of this nature "frequently are gambling devices or readily converted into such by a mere mechanical adjustment or by their use for wagering." (McQuillin, Municipal Corporations, § 24.141, p. 725.) These games are particularly tempting to children and reasonably may be viewed as a notorious

waste of both time and money, encouraging loitering, gambling and other unproductive habits. (See *Sternall* v. *Strand,* 76 Cal.App.2d 432, 436-437 [172 P.2d 921].) Finally, unlike the sports activities listed above, pinball games involve essentially no physical activity whatever, and cannot be justified as promoting either physical fitness or good sportsmanship. Accordingly, it seems clear to me that a rational basis exists to justify the regulation of pinball and similar games. (See generally, McQuillin, *supra,* §§ 24.139-24.141, citing cases upholding similar legislation; see also *Sharpe* v. *Johnson,* 81 Cal.App.2d 939 [185 P.2d 340], and cases cited.)

I would reverse the judgment.

Clark, J., concurred.