[No. E000676. Fourth Dist., Div. Two. Mar. 22, 1985.]

AMUSING SANDWICH, INC.,
Plaintiff, Cross-defendant and Appellant, v.
CITY OF PALM SPRINGS et al.,
Defendants, Cross-complainants and Respondents.

1118

1120

**COUNSEL**

Richard L. Knickerbocker and J. K. Moran for Plaintiff, Cross-defendant and Appellant.

William J. Adams, City Attorney, and Siegfried H. Siefkes, Assistant City Attorney, for Defendants, Cross-complainants and Respondents.

**OPINION**

McDANIEL, J.—The Amusing Sandwich (plaintiff) is a video game and fast food operation, which claims to be "THE ONLY VIDEO ARCADE IN DOWNTOWN PALM SPRINGS." The action in the trial court was brought by plaintiff against the City of Palm Springs (City), seeking an injunction to prevent the enforcement of a City interim ordinance prohibiting the installation of any video games in City's central business district (CBD). City filed a cross-complaint, claiming that plaintiff's violation of the ordinance was a nuisance per se and should be abated. While the action was pending, the interim ordinance was replaced by a permanent ordinance, one which

limited installation of video games in the CBD to four games or less in any one commercial facility.

After trial to the court, sitting without a jury, on a stipulated set of facts, judgment was entered for City and against plaintiff on all counts, and plaintiff was permanently enjoined from maintaining more than four video games on its premises.

Plaintiff appealed, contending: (1) the applicable ordinances (see *infra*) violate plaintiff's equal protection rights; (2) the ordinances violate plaintiff's due process rights; (3) a City planning commission resolution on video games (see *infra*) constituted an improper delegation of authority by the City to the planning commission; (4) the applicable ordinances are unconstitutionally vague; (5) a certificate of occupancy which City issued to plaintiff was improper; (6) the trial court erred in granting the injunction, because plaintiff's use of its property did not constitute a nuisance; (7) plaintiff has a vested right to operate 25 video games on its premises; and (8) City is estopped from preventing plaintiff's operation of the games.

### FACTS

The operative events occurred in the six-month period from July through December of 1982.

On July 6, plaintiff's president, plaintiff's attorney and a third representative of plaintiff told City's planning director that plaintiff intended to establish a sandwich shop with 25 video games at 160 East Andreas in City's CBD. The director advised them that such an operation would be contrary to City's zoning ordinance; that video games could be placed on the premises only as an accessory use, and that, under "long-standing" City policy, the accessory use of electronic games was limited to four games or less. Plaintiff's attorney (who had previously been the assistant city attorney) challenged the validity of City's policy on electronic games. The director said he would ask the planning commission to adopt a resolution of record on the subject.

On July 13, City issued to plaintiff a "BUSINESS LICENSE TAX RECEIPT" which provides in part that "Issuance hereof does not entitle the licensee to operate or maintain a business in violation of any other law or ordinance." At that time, sections 9229.01 and 9229.02 of City's zoning ordinance provided that pinball machines, shooting galleries and electronic games were not permitted as primary uses in the CBD, and that billiard parlors, bowling alleys, ice skating rinks, miniature golf courses and tennis courts were permitted in the CBD only by reason of a conditional use permit. As noted,

existing City policy as to electronic games had been to permit four machines per location as an accessory use.

On July 14, City's planning commission adopted resolution No. 3445. The resolution provided in relevant part: "WHEREAS The Planning Commission has reviewed the policy of [City] staff in effect for some seven years and finds that policy to be reasonable and consistent and should be formalized; [¶] Now THEREFORE BE IT RESOLVED that the Planning Commission does hereby approve a Resolution of Record determining that an accessory or secondary use for electronic game machines is four machines or less, and that the definition of a primary use is five machines or greater."

On August 13, City issued a building permit to plaintiff for "Tenant improvement for hot dog and sandwich shop."

On September 23, City issued a certificate of occupancy to plaintiff. The certificate recites in relevant part: "NOTE: This Certificate of Occupancy is subject to the condition that no video or electronic games shall be placed on these premises."[1] Salvatore Cavallaro, one of the owners of plaintiff, refused to accept the certificate.

On September 27, plaintiff's attorney was advised that an interim ordinance which would prohibit the installation of video games within City for a period of four months would be presented to the city council for action on the afternoon of September 28.

On either September 27 or the morning of September 28, plaintiff installed 25 video games on its premises. Many of the games can be played by two or more players. The restaurant portion of plaintiff's premises contains two tables with two chairs each, and two counters, each with a single bar stool.

On the afternoon of September 28, the city council enacted an interim ordinance (ordinance No. 1165) prohibiting the installation of video games within City.

On October 5, plaintiff filed its complaint, *supra,* for injunctive relief.

On October 12, City filed its cross-complaint, *supra.*

On November 3, injunctive relief pending trial was granted to plaintiff and denied to City.

---

[1]According to a memo in the record, all certificates of occupancy in the CBD were to be subject to the same condition, pending the enactment of a permanent video arcade ordinance.

On November 17, the city council enacted an ordinance regulating video arcades (ordinance No. 1166). The ordinance provides that video games are permitted in the CBD as primary or secondary uses (five machines or more) only in conjunction with resort hotels, and otherwise only as accessory uses (four machines or less).[2]

On December 17, ordinance No. 1166 became effective.

On December 7, 1983, plaintiff's complaint and City's cross-complaint proceeded to trial.

In its statement of decision, the court ruled that: (1) all the applicable municipal codes and ordinances were constitutional; (2) the planning commission Resolution No. 3445, *supra,* was properly adopted; (3) the certificate of occupancy was proper; (4) plaintiff's use of its premises constituted a public nuisance; (5) plaintiff did not have a vested right to operate 25 video games on its premises; and (6) City had made no prior representation to plaintiff that City would approve the use of more than four games on plaintiff's premises.

---

[2]Ordinance 1166 is entitled "AN ORDINANCE OF THE CITY OF PALM SPRINGS, CALIFORNIA, TO REGULATE THE USE OF VIDEO-AMUSEMENT ARCADES THROUGHOUT THE CITY," and provides in pertinent part:

"A. DEFINITIONS . . . 1. Video-amusement machine shall mean any machine, device, or game . . . which . . . by paying therefore [*sic*] in advance or after use permits a person/persons to use the device as a game, contest of skill, or amusement . . . It shall include, but not be limited to, such devices as electronic or mechanic game machines, pinball machines, skillball, bowling machines, or any other mechanical or electronic or operation similar thereto under whatever name they may be indicated. . . .

"2. Primary and secondary uses shall mean any location where five (5) or more video-amusement machines are placed on a premise.

"3. Accessory use shall mean any location where four (4) or less video-amusement machines are placed on a premise. "B. VIDEO-AMUSEMENT ARCADES AS A PRIMARY OR SECONDARY USE . . . Video-amusement arcades as a primary or secondary use shall be permitted in C-D-N, C-1, C-2, CSC and O zones subject to the requirements of a conditional use permit. Video-amusement arcades as a secondary use shall be permitted in conjunction with resort hotels in R-2, R-3, R-4, R-4VP, *CBD* and CIAA Zones subject to the approval of a conditional use permit. . . .

"C. VIDEO-AMUSEMENT MACHINES AS AN ACCESSORY USE . . . Video-amusement machines as an accessory use to a conforming, established use shall be permitted in all commercial and industrial zones, hotels, and private and public clubhouses except as provided herein. Accessory uses shall be approved in writing by the Community Development Director or his designee prior to the issuance of a business license. . . .

"D. AMORTIZATION OF EXISTING USES [¶] Any use which is nonconforming as defined by this Chapter shall be removed or be brought into conformance with this Chapter within one year of the effective date of this Section. . . . This Ordinance shall be in full force and effect thirty (30) days after passage." (Italics added.)

## I

### Equal Protection

■ Plaintiff's equal protection claim is that sections 9229.01 and 9229.02 of City's zoning ordinance, *supra*, and ordinance No. 1166, *supra* (the Ordinances), treat video games differently from billiards, bowling, skating, miniature golf and tennis, "without a scintilla of evidence that there is a basis for difference in treatment." In support of this claim, plaintiff relies principally on *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726 [114 Cal.Rptr. 460, 523 P.2d 260].

In *Cossack,* the court invalidated a Los Angeles ordinance which prohibited the maintenance of *any* pinball machines in *any* place of business or public resort, on the grounds that the ordinance arbitrarily discriminated against the particular games of skill which fell within its terms. The court's arbitrariness finding was based exclusively on *Looff* v. *City of Long Beach* (1957) 153 Cal.App.2d 174 [314 P.2d 518], which invalidated a Long Beach ordinance on grounds that it arbitrarily discriminated between different types of *concession* games, by requiring a permit for the balloon-dart and knife-throwing games and not requiring a permit for the nearby archery, baseball, basketball and quoit games. After a detailed examination of the features of each of the foregoing games, the *Looff* court held that the distinction was arbitrary because those six particular *concession* games were fundamentally the same in that they all required the same muscular and eye control functions to develop skill. (*Id.,* at p. 183.)

In this case, however, the distinction made is not between particular games *within* a class, as in *Looff,* and (presumably) in *Cossack,* but between one class of games (electronic games) and another demonstrably different class or classes of games (billiards, bowling, ice skating, miniature golf and tennis).

Moreover, the invalid ordinance in *Cossack* was prohibitory, and the ordinances here are merely regulatory, and the invalid distinction in *Looff* was between regulation and nonregulation, while the distinction here is merely between two types of regulations (accessory use versus the requirement of a conditional use permit). Parenthetically, in regard to the regulations here, we note that the accessory use regulation as to video arcades may not be materially different from the conditional use regulations as to the other games. Section 9402.00, which relates to conditional use permits, requires "special consideration in a particular zone . . . to . . . the unusual traffic, noise . . . or to the effect that such uses may have on property values,

health, safety, and welfare in the neighborhood or in the community as a whole."

■ "A municipality may impose reasonable regulations upon the conduct of an economic enterprise." (*Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281].) "The reasonableness of such a restrictive ordinance 'is dependent upon the nature of the business being regulated and the degree of threat that the operation of such business presents to the tranquility, good order, and well-being of the community at large. So long as a "patent relationship between the regulation and the protection of the public health, safety, morals, or general welfare" exists, the regulations will be considered reasonable.'" (*People* v. *Glaze* (1980) 27 Cal.3d 841, 845 [166 Cal.Rptr. 859, 614 P.2d 291].) "[W]hile a legislative classification is improper if it is not founded upon some natural, constitutional or intrinsic distinction which reasonably justifies a difference in treatment, a classification which has a substantial relation to a legitimate object to be accomplished is valid. If any state of facts can reasonably be conceived which would sustain a statutory classification, there is a presumption that this state of facts exists and the burden of demonstrating arbitrariness rests upon the party who assails the classification." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal.Rptr. 481, 409 P.2d 481].)

■ In light of the foregoing authorities, the evidentiary record here includes a May 1982 report by the planning division of City's department of community development (the Report). The Report refers to a "national concern" that video arcades are creating social problems such as juvenile delinquency, noise, pedestrian and traffic interference, and security problems for law enforcement officers. As to the local scene, the Report recites that existing City staff policy permits four video machines in a single commercial location as a secondary use; that Desert Hot Springs has a similar policy; that Indio requires a conditional use permit for three video machines or more in a commercial zone; that Palm Desert requires a conditional use permit for five video machines or more, and that not one of the outside communities noted has any major problems with video arcades.

On the basis of the Report, City could justifiably conclude that an increase in the existing use of four video machines per location in the CBD would threaten the safety, morals and general welfare of both the patrons of the district and the community at large.

In addition and more particularly, section 9229 of City's zoning ordinance provides in relevant part that the CBD "is intended to be a compact, lively, active, intensively used area *catering to the pedestrian. . . . sitting, dining,*

*conversing, gathering, and window shopping* are permitted and encouraged." (Italics added.) Considering the known noise, traffic and security hazards posed by video arcades, City's refusal to increase the existing use of video machines in the CBD has a substantial relationship to its legitimate police power objectives for that area.

In view of all the above, plaintiff has not met its burden of demonstrating that the Ordinances are arbitrary or unreasonable.

## II

### DUE PROCESS

■ Plaintiff contends that the Ordinances violate due process by depriving plaintiff of its property rights. This contention is without merit.

■ "Where property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property." (*Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 68 [68 L.Ed.2d 671, 680, 101 S.Ct. 2176].)

■ Plaintiff has failed, *supra,* to demonstrate that the ordinances are unreasonable, and cites no evidence that the legislation has deprived it of the economically viable use of its property.

## III

### DELEGATION

■ Plaintiff contends that the planning commission's resolution No. 3445, *supra,* defining a secondary use of video games as four games or less, was an unconstitutional delegation of authority by the City because it resulted in the September 1982 issuance of the certificate of occupancy, *supra,* prohibiting plaintiff from installing any video games on its premises. Not so.

Plaintiff relies on: (1) *People* v. *Perez* (1963) 214 Cal.App.2d Supp. 881 [29 Cal.Rptr. 781], where a planning commission had virtually unlimited powers to grant or reject conditional use permits; (2) *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], where a planning commission's granting of a variance was unsupported by substantial evidence; and (3) *Gabric* v. *City*

*of Rancho Palos Verdes* (1977) 73 Cal.App.3d 183 [140 Cal.Rptr. 619], where a city's refusal to issue a building permit was based on a decision of its environmental assessment committee, rather than on any existing law, rule or ordinance.

Those cases are distinguishable, however, because the certificate here was issued by City and not by its planning commission, and because there is no evidence that City's decision to issue the certificate was in any way influenced by, much less based on, the planning commission's resolution No. 3445. Moreover, any defect in the issuance of the certificate was rendered moot by the judgment, which provided that the certificate would have no further force or effect.

## IV

### VAGUENESS

■ Without citing any specific provisions thereof, plaintiff contends that "The Ordinance Restricting Accessory Uses [presumably Ordinance No. 1166] Was Void for Vagueness." This contention is specious.

■ "[T]he due process doctrine of vagueness . . . incorporates notions of fair notice or warning." "[¶] . . . '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" (*Smith* v. *Goguen* (1974) 415 U.S. 566, 572 and fn. 8 [39 L.Ed.2d 605, 611, 94 S.Ct. 1242].)

■ Ordinance No. 1166 provides a detailed description of a video-game machine, specifies the maximum number of machines which may be installed in any one location in any particular zone, and provides additional, specific, requirements as to space, parking and advertising for the different zones. The ordinance is not vague.

If plaintiff is referring to the state of affairs before ordinance No. 1166 was enacted, there was uncontradicted evidence that existing City policy restricted accessory use of video games to four games or less. Plaintiff argues that "the declaration of David Kramer [plaintiff's president] establishes discriminatory enforcement." Not so. What the declaration does provide on the enforcement issue is that "some of the City's officials have said after I became committed to my project . . . that even though [video games] are accessory uses, *if there are more than four they are not permitted.*" (Italics added.) In view of this statement, and in view of the fact that Kramer was one of the people who on July 6 was informed by City's planning

director of the four or less limitation, plaintiff can hardly complain that it was not given "fair notice or warning" of that limitation. Plaintiff obviously decided, *before* the existing numerical restrictions on video games in the CBD were applied to plaintiff's case, to challenge those restrictions. Having lost that contest, plaintiff cannot credibly claim that it was unaware of the very restrictions it challenged.

## V

### The Certificate of Occupancy

Plaintiff contends that the certificate of occupancy prohibiting the installation of video games on its premises was invalid because unauthorized. Plaintiff relies on *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48 [107 Cal.Rptr. 214], and *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241 [129 Cal.Rptr. 882], which, respectively, concern the enactment of a city and a fire district ordinance. These cases are clearly inapposite because they involve legislative acts, and the issuing of the certificate here was an administrative act. Otherwise, as noted, any defect in the certificate or its issuance have been rendered moot by the judgment.

## VI

### Nuisance

Plaintiff contends that the injunction should not have been granted, because plaintiff's operation of the 25 games on its premises did not constitute a nuisance and was not a clear violation of the zoning code. This contention is without merit.

"By ordinance the city legislative body may declare what constitutes a nuisance." (Gov. Code, § 38771.) "[E]ven though something may not be a nuisance per se, it is still within the police power to declare it a nuisance for regulatory purposes." (*Fallen Leaf Protection Assn.* v. *State of California* (1975) 46 Cal.App.3d 816, 825 [120 Cal.Rptr. 538].) "Where the Legislature has determined that a defined condition or activity is a nuisance . . . [t]he function of the courts in such circumstances is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid." (*City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100 [48 Cal.Rptr. 889, 410 P.2d 393].)

In its cross-complaint for injunctive relief, City alleged that plaintiff's installation and use of 25 video electronic games on its premises con-

stituted a violation of section 9229.02 of City's zoning ordinance ("The following classification of uses shall not be permitted in [the CBD] . . . electronic games as [a] primary [use]") as interpreted by the City planning commission resolution No. 3445 ("the definition of a primary use [for electronic game machines] is five machines or greater"), and that section 11.72.080 of City's municipal code provides that " 'Any violation of the zoning ordinance of the City is a public nuisance.' "

More particularly as to the zoning violation, paragraph VIII of City's first cause of action provides: "Commencing on or about September 28, 1982, and continuing ever since Cross-Defendants [plaintiff], and each of them, did install twenty-five video electronic games on said premises, located at 160 E. Andreas Raod [*sic*], Palm Springs, California, and ever since that time have used, and are using said premises for a public video electronic game arcade, *a use expressly prohibited by Section 9229.02 of the zoning ordinance, and by so using said premises, said Cross-Defendants have been, and are, in continuing violation of said section of the zoning ordinance.*" (Italics added.)

In plaintiff's five-page answer to the cross-complaint, in which it admitted and denied various allegations thereof, including allegations in paragraphs VII and IX of City's first cause of action, *plaintiff made no reference whatsoever to the foregoing paragraph VIII.* By failing to controvert City's allegation in paragraph VIII that plaintiff's use of 25 video games on its premises was a violation of the zoning ordinance, plaintiff admitted the violation (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 4 [187 P.2d 752]) and the trial court so found. Moreover, we have discovered no evidence in the record to contradict the violation, and on appeal, plaintiff has cited no such evidence.

Finally, as to the second or constitutional requirement of *City of Bakersfield* v. *Miller, supra,* 64 Cal.2d 93, 100, the trial court found that the applicable sections of City's municipal code and zoning ordinance were constitutionally valid, and that City's planning commission resolution No. 3445 was properly adopted.

In view of all the foregoing, the injunction was proper.

## VII

### VESTED RIGHT

Plaintiff contends that it had a vested right to operate 25 video games on its premises, because it relied in good faith "on ordinances per-

mitting video games as accessory uses." This contention is unsupported by the record. Significantly, plaintiff does not contend that it relied on any ordinances or representations as to the *number* of games which constituted accessory uses. Moreover, there was uncontradicted evidence that plaintiff was timely informed of City's "long-standing" policy limiting accessory uses of video games to four games or less in the CBD, and plaintiff has cited no representations to the contrary.

VIII

ESTOPPEL

Plaintiff contends that City is estopped from preventing plaintiff's use of the 24 games on its premises, because City granted plaintiff a license and "permitted" the installation of the games. This contention is also unsupported by the record.

" 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].)

In this case, the relevant (1982) facts are: (1) on July 6, plaintiff was told by a City official that plaintiff could not install more than four games on its premises; (2) on July 13, City issued plaintiff a business license tax receipt which provided that "Issuance hereof does not entitle the licensee to operate or maintain a business in violation of any other law or ordinance"; (3) on September 23, City issued plaintiff a certificate of occupancy which provided that "no video or electronic games shall be placed on these premises"; (4) on September 27 or 28, plaintiff installed 25 games on its premises.

In view of the foregoing facts, *plaintiff* should be estopped from contending that City did or said anything to make plaintiff believe it could install more than four games on its premises.

## DISPOSITION

The judgment is affirmed.

Morris, P. J., and Kaufman, J., concurred.