[No. B108910. Second Dist., Div. Two. Sept. 29, 1998.]

CALIFORNIA RIFLE AND PISTOL ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
CITY OF WEST HOLLYWOOD et al., Defendants and Respondents.

1306

COUNSEL

Michel & Associates, C. D. Michel, Benenson & Kates and Don B. Kates for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, M. David Stirling, Chief Deputy Attorney General, Paul V. Bishop, Deputy Attorney General, Steven Silver, Don Kilmer and Daniel Shultz as Amici Curiae on behalf of Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, H. Anthony Nicklin, Principal Deputy County Counsel, Michael Jenkins, City Attorney, Richards, Watson & Gershon, Sayre Weaver and T. Peter Pierce, for Defendants and Respondents.

Louise H. Renne, City Attorney (San Francisco), G. Scott Emblidge and Ellen M. Forman, Deputy City Attorneys, Paul M. Krekorian, Dennis A. Henigan, Brian J. Siebel, O'Melveny & Myers, Robert C. Vanderet, John F. Niblock and Scott M. Voelz as Amici Curiae on behalf of Defendants and Respondents.

OPINION

ZEBROWSKI, J.—The City of West Hollywood (the City) passed an ordinance which banned, within city limits, the retail or wholesale sale of any handgun which the City classifies as a "Saturday Night Special" (SNS).

Plaintiffs sued to invalidate the ordinance, primarily contending that the ordinance was preempted by state law. The City moved for summary judgment. The trial court found the ordinance not preempted and otherwise valid, and granted the City's motion. This appeal followed.

Arrayed on either side of the issue are opposing armies of parties and amici curiae. The plaintiffs are the California Rifle and Pistol Association, the National Rifle Association, a UCLA law professor and a UCLA English professor who have paid taxes "levied for the benefit of the . . . City," plus the owner of a West Hollywood jewelry store and the owner of a West Hollywood pawnshop who wish to purchase SNS handguns within the City. The amici curiae supporting plaintiffs are the Congress of Racial Equality, the Women's Safety Alliance, the Law Enforcement Alliance of America, the Lawyers' Second Amendment Society, Doctors for Integrity in Policy Research, Doctors for Responsible Gun Ownership, Gun Owners of America, the Second Amendment Foundation and the Attorney General of California. Named as defendants are the City, the Los Angeles County Sheriff, and the Los Angeles County Sheriff's Department. The amici curiae supporting defendants are the League of Women Voters of California, The Southern Christian Leadership Conference of Greater Los Angeles, the Bay Area Urban League, the California Police Chiefs' Association, the California Peace Officers Association, the Community Wellness Partnership, Drive By Agony, Santa Cruz Barrios Unidos, the Los Angeles Commission on Assaults Against Women, Women Against Gun Violence, the Center to Prevent Handgun Violence, the Legal Community Against Violence, the Trauma Foundation, the City and County of San Francisco, the cities of Alameda, Albany, Berkeley, Carlsbad, El Cerrito, Emeryville, Livermore, Los Angeles, Montebello, Oakland, Pomona, Redlands, San Carlos, San Jose, San Luis Obispo, San Pablo and Santa Cruz, and the California Congress of Parents, Teachers and Students.

This collection of voices has generated extensive argumentation, much of it in the nature of policy debate on the merits and demerits of gun control. However, this court has limited authority over the merits or demerits of public policy regarding gun control, and this opinion will be confined to legal issues. Much of the rhetoric presented, whatever its merit in the realm of policy debate, has little relevance to the legal issues presented on this appeal.

The primary legal issue is whether the Legislature has completely preempted the field of regulation of handgun sales. In the absence of state preemption, every municipality is authorized by the California Constitution

to exercise its police power to deal with local situations. Since the police power of a municipality is coterminous with (although subordinate to) the police power of the state, the police power of a municipality includes the power to regulate handgun sales. The question, therefore, is whether the state Legislature has *taken away* the City's constitutional power to regulate handgun sales.

Although gun control is a keenly contested area of public policy debate, and even though well-considered policy arguments have been presented on both sides, this appeal presents no truly controversial legal issue in the arcane realm of preemption law. Although it is clear that the Legislature *could* preempt all local ordinances regarding handgun sales, it is equally clear that the Legislature has not done so. Instead, the Legislature has studiously avoided comprehensive preemption of such local laws despite several legislative opportunities to enact a complete preemption. Since the Legislature has avoided preemption of all local regulation of handgun sales, the City continues to enjoy at least some of its constitutional right to regulate handgun sales. The ordinance in question here does not directly conflict with any state statute, and the question of whether to have such an ordinance is a decision within the authority of local elected legislators. We will therefore affirm the summary judgment in favor of the City on the preemption issue.

Plaintiffs raise other arguments concerning equal protection and due process,[1] but neither of these arguments reveals any basis for invalidating the City's use of its police power in the manner involved here. In the absence of sound legal reason to do so, a court would be acting illegitimately if it interfered with the political judgment of local elected officials simply because some might disagree with that political judgment. We will therefore affirm the summary judgment in favor of the City on these constitutional issues.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. *The ordinance and its implementation.*

West Hollywood Municipal Code section 4122, entitled "Saturday Night Specials—Sale Prohibited," defines several categories of SNS. In general, these categories take into account weapon type (revolver, semiautomatic, etc.), parts composition, action, chambering relative to ammunition breech pressures, and action mechanisms. The ordinance specifically excludes certain categories of weapons (antiques, pneumatic guns, children's toys, permanently inoperable weapons—all with more detailed definitions). The

---

[1]No Second Amendment argument is involved on this appeal.

ordinance provides that the city manager will compile, publish and maintain a roster of the SNS's determined to satisfy the definition. The city manager must publish the roster semiannually and send a copy to every dealer within the City licensed to sell and transfer firearms. The "Final Roster" lists at least 28 banned semiautomatic pistols, and numerous brands and models of double- and single-action revolvers and derringers.

In the provision that is key here, the ordinance states: "No wholesale or retail gun dealer shall sell, offer or display for sale, give, lend or transfer ownership of, any firearm listed on the Roster of Saturday Night Specials. This section shall not preclude a wholesale or retail gun dealer from processing firearm transactions between unlicensed parties pursuant to Section 12072(d) of the Penal Code of the State of California." (West Hollywood Mun. Code, § 4122.e).[2] Violation of the ordinance is a misdemeanor, punishable by fine of up to $1000, imprisonment in the county jail for up to six months, or both.

B. *Plaintiffs' action and the City's motion for summary judgment.*

Plaintiffs challenged the ordinance on the basis of preemption, equal protection, and due process. The City filed a motion for summary judgment, asserting that the ordinance was neither preempted nor otherwise constitutionally invalid. With its motion, the City lodged a 900-page "Legislative History." The parties then stipulated that there were no disputed facts relating to preemption, and agreed that the preemption issue could be resolved as a matter of law. Plaintiffs did file a "counterstatement" of facts, but only as to their equal protection and due process claims. The trial court granted the City's motion for summary judgment, finding no preemption and no violation of equal protection or due process.

II. DISCUSSION

A. The question as to preemption is whether the state Legislature has *removed* the constitutional police power of the City to regulate handgun sales.

The arguments contained in the briefs and the exhibits sometimes discuss the issue as if the question were whether the Legislature had bestowed upon

---

[2]Penal Code section 12072, subdivision (d) provides: "Where neither party to the transaction holds a dealer's license issued pursuant to Section 12071, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through either of the following: [¶] (1) A licensed dealer pursuant to Section 12082[;] [¶] (2) A law enforcement agency pursuant to Section 12084."

the City a power to regulate firearms, a power which the City would not otherwise have. Such arguments misconstrue the constitutional allocation of power in California.

█ Under article XI, section 7 of the California Constitution, a "city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." It is this constitutional power, enjoyed by every municipality, that is commonly termed the "police power." As the California Supreme Court noted in *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876], "[u]nder the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. (Cal. Const., art. XI, § 7.) Apart from this limitation, the 'police power [of a county or city] under this provision . . . is as broad as the police power exercisable by the Legislature itself.' (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140 . . . .)"

Since the police power exercisable by a municipality is coextensive with the police power exercisable by the Legislature, it follows that if the Legislature has the police power to regulate a certain area, municipalities also have the police power to regulate that same area. All parties agree, at least implicitly, that the Legislature has the power to regulate in the area of firearms control. Our starting point in this case, therefore, is that the City also has the constitutional power to regulate in the area of firearms control. The question is whether the Legislature has taken away the City's constitutional power to regulate firearms sales in the manner done in the ordinance under attack here.

B. *The law of preemption.*

█ If local legislation conflicts with state law, it is preempted. " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534].) "Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation] or when it has impliedly done so . . ." (*Id.* at pp. 897-898.)

C. *There has been no express preemption.* .

■ The issue of preemption presented here is not a completely new issue, but rather an old issue in a slightly new context. The statutes, the judicial rulings interpreting the statutes, and the legislative responses to the judicial rulings demonstrate that the Legislature has carefully avoided a blanket preemption in the field of firearms regulation. Instead, the Legislature has left many aspects of a municipality's constitutional police power to regulate firearms intact. Although the Legislature has declared an express intent to "occupy the field" with regard to limited subfields of the universe of firearms regulation, the Legislature has carefully refrained from manifesting any intent to completely eliminate the City's authority to enact the specific type of ordinance at issue here. The ordinance hence clearly falls within an area of police power left undisturbed by the Legislature.

1. *The statutes.*

Three statutes bear most directly on the issue.

Government Code section 53071 provides: "It is the intention of the Legislature to occupy the whole field of regulation of the *registration or licensing* of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to *registration or licensing* of commercially manufactured firearms, by any political subdivision . . . ." (Italics added.) This section expressly deals only with *registration* or *licensing*, as has been extensively analyzed in case law discussed below. The fact that the Legislature expressly limited its preemption in this statute to "registration and licensing" shows a legislative intent not to preempt other areas of firearms regulation, at least not in this statute.

Penal Code section 12026, subdivision (b) provides: "No *permit or license* to purchase, own, possess, keep or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by [various statutes], to purchase, own, possess, keep, or carry, either openly or concealed, a pistol, revolver, or other firearm capable of being concealed upon the person *within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.*" (Italics added.) This section deals only with *permits* or *licenses* to carry concealable firearms *at home or on one's own property or place of business,* and has also been analyzed in the case law discussed below. The fact that the Legislature

limited the coverage of this statute to permits or licenses for possessing a weapon at home, in a place of business, or on private property shows a legislative intent not to preempt other areas of firearms regulation, at least not in this statute.

Perhaps most tellingly, Government Code section 53071.5 states: "By the enforcement [*sic*] of this section, the Legislature *occupies the whole field* of regulation of the manufacture, *sale*, or possession of *imitation* firearms, as defined in Section 417.2 of the Penal Code, and that section shall preempt and be exclusive of all regulations relating to the manufacture, *sale*, or possession of *imitation* firearms, including regulations governing the manufacture, *sale*, or possession of BB guns and air rifles . . . ." (Italics added.) This section shows the language that the Legislature can be expected to use if it intends to "occupy the whole field." This statute is expressly limited to *imitation* firearms, thus leaving real firearms still subject to local regulation. The express preemption of local regulation of *sales* of *imitation* firearms, but not sales of real firearms, demonstrates that the Legislature has made a distinction, for whatever policy reason, between regulating the sale of real firearms and regulating the sale of imitation firearms.

Arguments might be raised about whether it makes sense for the Legislature to occupy the field of regulation of *imitation* firearms, while not occupying the field of regulation of *real* firearms, but even assuming an opinion that it does not make sense, such an opinion would not operate to transport the locus of decision from the Legislature to the courts. The question is who gets to decide. Whether to preempt or not to preempt is a decision for the Legislature, not for the courts. The courts simply carry out legislative intent regarding preemption. The courts cannot properly base decisions about preemptive intent upon subjective opinions regarding the quality or value of the Legislature's reasons. Instead, the courts must simply determine whether the Legislature did or did not intend to preempt. The reasons which might motivate one decision or the other are matters within the exclusive province of the Legislature.[3]

These three statutes are essentially all of the legislative pronouncements from which an express preemption argument might be constructed. None of the above three statutes express a legislative intent to divest the City generally of its police power to regulate the sale of handguns; instead these statutes demonstrate a quite contrary choice to legislate narrowly, thus

---

[3]A statute containing irrational provisions or classifications is subject to substantive due process attack, but that is a different question from the instant question of whether the Legislature *intended* to preempt.

avoiding any implication of wholesale divestiture of the City's constitutional police power to regulate firearms. As the court in *Suter* v. *City of Lafayette* (1997) 57 Cal.App.4th 1109 [67 Cal.Rptr.2d 420] stated when discussing the Legislature's express preemption of the field of regulation of *imitation* firearms: "There is no comparable Legislative declaration of intent fully to occupy the whole field of regulation of the sale of nonimitation firearms . . . ." (*Id.* at p. 1124.)

Plaintiffs nevertheless argue that Government Code section 53071 (which is limited to registration and licensing) and Penal Code section 12026 (which concerns only permits and licenses for possession at home, on private property, etc.) expressly preempt the City's regulation of sales of SNS. Such a construction, however, stretches the words of these statutes beyond their literal meaning and is directly contrary to the historical record discussed in the next section below. As the court stated in *Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th at page 1119, footnote 2: "It could be, and has been, argued that Government Code section 53071 [dealing with registration and licensing] is itself an expression of intent to occupy the whole field of firearm regulation. However, the cases uniformly construe state regulation of firearms narrowly, finding no preemption of areas not specifically addressed by state law. (E.g., *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851 . . . [legislation prohibiting licensing of firearms does not preclude local government from registering firearms]; *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897 . . . [legislation preempting area of licensing and registration of firearms does not preempt local government from regulating the use of firearms]; *Doe* v. *City and County of San Francisco* (1982) 136 Cal.App.3d 509, 516 . . . [legislative response to case law suggests 'that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms.'].)"

In summary, the Legislature has expressly declared that the City may not require the licensing or registration of firearms. (Gov. Code, § 53071.) The Legislature has also declared that the City may not require permits or licenses to purchase, own, possess, keep, or carry a pistol, revolver, or other firearm capable of being concealed within a place of residence, place of business, or on private property lawfully owned or lawfully possessed. (Pen. Code, § 12026.) The Legislature has also declared that the City may not regulate the sale of "imitation" firearms. (Gov. Code, § 53071.5.) This, however, is the extent of the fully preempted fields.

Only two references in state law to prohibitions on local regulation of firearms sales have been cited. One is with regard to "imitation" firearms,

where "sale" is expressly identified as a prohibited area of local regulation. The other is with regard to the ban on "permits or licenses" to purchase "a" concealable firearm for possession on private property, etc.[4] The ordinance in question does not concern imitation firearms, nor does it require a permit to purchase a concealable firearm. It does something a bit different, something not covered by state law. The imitation firearms statute (Gov. Code, § 53071.5 ["Legislature occupies the whole field"]), the licensing and registration statute (Gov. Code, § 53071 ["It is the intention of the Legislature to occupy the whole field"]) and the permit or license statute (Pen. Code, § 12026 ["No permit or license . . . shall be required"]) demonstrate the use of clear methods for expressly preempting an entire defined field of possible local regulation. The imitation firearms statute additionally shows the Legislature's view of "sale" as a separate area of regulation. The statutes contain no express preemption covering the field of handgun sales. To the contrary, the state statutes are carefully worded to avoid any broad preemptive effect.

### 2. The judicial and legislative history.

The conclusion that the Legislature has not expressly preempted local regulation of handgun sales is confirmed by an almost 30-year history of successive legislative responses to successive court rulings. In each case, the court held that the entire field of firearms control was not preempted by existing statutes, and the Legislature's only response was limited and circumscribed new legislation, rather than a wholesale preemption.

In *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 856, footnote 2 [76 Cal.Rptr. 642, 452 P.2d 930] the Supreme Court dealt with former Penal Code section 12026, which at the time stated that " '*no permit or license to purchase, own, possess or keep* [a firearm at residence or place of business] *shall be required . . . .*' " The City of San Francisco had enacted an ordinance requiring the *registration* (not the licensing) of certain firearms. This ordinance was attacked on grounds that it was preempted by former section 12026 (which dealt only with permits or licenses). Distinguishing the concept of licensing from the concept of registration, the Supreme Court stated: "We conclude that the San Francisco registration requirement does not conflict with the permit and licensing provision of section 12026 of the Penal Code." (*Galvan, supra,* 70 Cal.2d at p. 859.)

The Legislature's response to *Galvan* was to enact what later became Government Code section 53071, quoted in part above, expressly declaring

---

[4]This provision provides perhaps the strongest argument for an implied preemption, yet still not one that can be accepted in view of other considerations. It is discussed later in this opinion.

that it was the Legislature's intent to "occupy the whole field of regulation of the *registration or licensing* of commercially manufactured firearms . . . and such provisions shall be exclusive of all local regulations, relating to *registration or licensing* of [such firearms] . . . ." (Italics added.) Thus the Legislature did not respond to *Galvan*, as it could have, by expressly stating its intent to preempt all local regulation of firearms, or all local regulation of handguns, or all local regulation of handgun sales, but instead expressly limited its preemption to *registration* and *licensing* only.

In *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897 [93 Cal.Rptr. 530], the court noted the significance of the Legislature's limited response to *Galvan*, stating: "Despite the opportunity to include an expression of intent to occupy the entire field of firearms, the legislative intent was *limited to* registration and licensing. We infer from this limitation that the Legislature did not intend to exclude municipalities from enacting further legislation concerning the use of firearms." (*Olsen, supra*, 15 Cal.App.3d at p. 902.) The court then proceeded to find that an ordinance prohibiting parents from allowing a minor to possess or fire a BB gun was not preempted because the Legislature had not preempted the subject of regulation of BB guns by minors.

In response to *Olsen*, the Legislature enacted Government Code section 53071.5, also quoted in part above, which expressly occupies the field of the manufacture, possession, or sale of *imitation* firearms. Thus once again the Legislature's response was measured and limited, extending state preemption into a new area in which legislative interest had been aroused, but at the same time carefully refraining from enacting a blanket preemption of all local firearms regulation.

In *Doe* v. *City and County of San Francisco* (1982) 136 Cal.App.3d 509 [186 Cal.Rptr. 380], San Francisco had enacted a ban on possession of handguns. Exempt from the ban, however, were those who possessed licenses under state law either to carry or to sell handguns. Thus possession of handguns in the home (which was specifically allowed under Penal Code 12026 without any license or permit) was facially prohibited unless the possessor had a license. The court found that the effect was "to create a new class of persons who will be required to obtain licenses in order to possess handguns." (136 Cal.App.3d at p. 517.) Government Code section 53071, however, expressly preempted the whole field of licensing requirements. The court concluded that the city had in effect created a licensing requirement for handguns in the home in violation of the express preemption of that field in Government Code section 53071. *Doe* also noted that even if it did not

consider the ordinance to contain a de facto licensing requirement, it would nevertheless find the ordinance impliedly preempted on the theory that Penal Code section 12026 (which preempts local requirements for permits or licenses to possess concealable weapons in the home) reflected a legislative intent to occupy the field of "residential handgun possession." However, the *Doe* court also noted that the decisions "suggest that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms," and that "[i]t is at least arguable that the state Legislature's adoption of numerous gun regulations has not impliedly preempted *all areas* of gun regulation." (*Doe, supra*, 136 Cal.App.3d at pp. 516, 518.)[5]

Other courts have also found this history significant: "[T]he Legislature's response to cases upholding local weapons legislation against a preemption challenge itself is persuasive evidence that it has no intention of preempting areas of weapons laws not specifically addressed by state statute. When the Legislature has enacted laws designed to regulate areas earlier found by the courts to have been unregulated by state law, it has declined to declare an intent to preempt broad areas of firearms control. In each instance the Legislature instead has enacted narrowly drawn legislation limited to the particular area earlier found unregulated by the courts, legislation that would be unnecessary if the Legislature intended the entire field to be preempted." (*Suter* v. *City of Lafayette, supra*, 57 Cal.App.4th 1109, 1119-1120.) The *Suter* court further explained: "The *Galvan* court . . . gave section 12026's expression of Legislative intent the narrowest possible construction. The Legislature could have responded to *Galvan* by declaring its intent to occupy the entire field of firearm control. It did not do so, instead enacting [what eventually became] Government Code section 53017, by which it extended the area of its exclusive control to 'registration and licensing.' The court in *Olsen* v. *McGillicuddy, supra*, 15 Cal.App.3d 897, later found that [statute] should not be construed as an expression of intent to exclude municipalities from enacting further legislation concerning the *use* of firearms. . . . The Legislature again declined to respond to a narrow judicial construction of its stated intent by declaring an intent to occupy the entire area of firearm control. Instead, it enacted Government Code section 53071.5 by which it stated its intent to preempt 'all regulations relating to the manufacture, sale, or possession of imitation firearms . . . .' In *Doe* v. *City and County of San Francisco, supra*, . . . , the Legislature was again invited to declare that its

---

[5]Plaintiffs nevertheless argue that *Doe* requires a finding of express preemption in this case. The City's ordinance, however, does not create any de facto licensing requirement similar to that involved in *Doe*. Gun dealers in the City cannot, simply by obtaining a license, avoid the ordinance. Nor is a license required for a person to possess a SNS handgun in the home, place of business, etc. Only the *sale* of SNS's within the City is prohibited.

actual intent was to occupy a broad area of firearms control and again declined to make any such declaration . . . . Although the *Doe* court, like the courts in the earlier cases, essentially invited the Legislature to state an intent to preempt local legislation in the area of firearm control, the Legislature has not responded to that invitation." (*Suter, supra,* 57 Cal.App.4th at p. 1120, fn. 3.)

Hence it is quite clear that the Legislature has not expressly preempted the area of local regulation of handgun sales.

D. *There has been no implied preemption.*

 Claims of implied preemption must be approached carefully, because they by definition involve situations in which there is no express preemption. Since preemption depends upon *legislative intent,* such a situation necessarily begs the question of why, if preemption was legislatively *intended,* the Legislature did not simply say so, as the Legislature has done many times in many circumstances. Hence the rule has developed that implied preemption can properly be found only when the circumstances "clearly indicate" a legislative intent to preempt. (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th 893, 898.) In the instant case, not only is there is no express preemption, but the history of avoidance of preemption undercuts plaintiffs' claims of implied preemption. Moreover, the specific tests for implied preemption demonstrate that there is no basis for a finding of implied preemption in this case.

 Implied legislative intent to preempt is gauged according to three "indicia of intent" to "fully occupy" a specific area. These three indicators of intent were identified by the Supreme Court in *Sherwin-Williams* v. *City of Los Angeles, supra,* 4 Cal.4th 893, 898. A local ordinance is preempted if: " '(1) the subject matter has been so fully and completely covered by general law as to *clearly indicate* that it has become *exclusively* a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to *indicate clearly* that a paramount state concern *will not tolerate* further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state *outweighs the possible benefit* to the' locality . . . ." (*Ibid.,* italics added.) The record here clearly shows that none of these possible "indicia of intent" establishes a legislative intention to preempt in this case.

Preliminarily, in view of the Legislature's record of carefully refraining from broad preemptions and instead dealing with narrow areas of firearms

control in statutes of limited scope, there is clear indication of absence of an intent to preempt. The discussion regarding express preemption above therefore necessarily overlaps into the present discussion of implied preemption. To rule that the Legislature *implicitly* intended to preempt, notwithstanding the clear record that the Legislature has *expressly avoided* preemption by the careful wording of its enactments, would be to disregard the Legislature's own pronouncements. An examination of the three "indicia of intent" laid out in *Sherwin-Williams* as tests for implied preemption reinforces the conclusion of no preemption.

The first indicator of implied intent to preempt stated in *Sherwin-Williams* is whether the subject matter is so fully and completely covered by state law as to "clearly indicate" that it has become "exclusively" a matter of state concern. Certainly nothing in the record here "clearly indicates" that this has happened. The record shows that, rather than intending to deprive municipalities of their police power to regulate handgun sales, the Legislature has been cautious about depriving local municipalities of aspects of their constitutional police power to deal with local conditions. For example, the express preemption regarding sales of imitation firearms, but not of real firearms, and the history of legislative reaction to court rulings demonstrate a legislative intent to proceed step-by-step only. As the *Suter* court pointed out: "[T]he Legislature's response to cases upholding local weapons legislation against a preemption challenge itself is persuasive evidence that it has no intention of preempting areas of weapons laws not specifically addressed by state statute." (*Suter* v. *City of Lafayette, supra,* 57 Cal.App.4th at p. 1119.) The general fact that state legislation concentrates on specific areas, and leaves related areas untouched (as has been done here), shows a legislative intent to permit local governments to continue to apply their police power according to the particular needs of their communities in areas not specifically preempted. (See, e.g., *Suter, supra,* 57 Cal.App.4th at p. 1119 ["That state law tends to concentrate on specific areas, leaving unregulated other substantial areas relating to the control of firearms, indicates an intent to permit local governments to tailor firearms legislation to the particular needs of their communities."]; and *Galvan* v. *Superior Court, supra,* 70 Cal.2d at p. 864 ["That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority."].) The very existence of the three code sections discussed above, each of which specifically preempts a narrowly limited field of firearms regulation, is a rather clear indicator of legislative intent to leave areas not specifically covered within local control. Thus state law does not "clearly indicate" that the Legislature has intended a preemption here; in fact, it clearly indicates the opposite.

Plaintiffs nevertheless argue that *Doe* v. *City and County of San Francisco*, *supra,* 136 Cal.App.3d 509, stands for the proposition that the City's ordinance in this case is impliedly preempted. Although the *Doe* court did find preemption in the context there involved, the *Doe* court further explained: "It is at least arguable that the state Legislature's adoption of numerous gun regulations has not impliedly preempted *all areas* of gun regulation. [Citing *Galvan* v. *Superior Cout*, *supra* 70 Cal.2d at p. 860.] However, we infer from Penal Code section 12026 that the Legislature intended to occupy the field of *residential handgun possession* to the exclusion of local governmental entities. A restriction on requiring permits and licenses necessarily implies that possession is lawful without a permit or license. It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession." (*Doe*, *supra*, 136 Cal.App.3d at p. 518, second italics added.) Plaintiffs argue that Penal Code section 12026 evidences an implied legislative intention to preempt local regulation of handgun sales. However, neither *Doe* nor Penal Code section 12026 helps plaintiffs. *Doe* identifies only "residential handgun possession" as a preempted field. The ordinance at issue here does not ban possession, residential or otherwise, of any type of weapon. Penal Code section 12026 prohibits only local "permit or license" requirements, and does not deal with sales. The ordinance at issue here creates no permit or license requirement, and instead regulates only sales.

The second *Sherwin-Williams* indicator of implied legislative intent to preempt is whether the subject matter is partially covered by state law, worded so as to "indicate clearly" that no further or additional local action is permissible. Most clearly, no such phenomenon has occurred here. To the contrary, the Legislature's successive enactments have all been carefully worded *not* to preclude local action on related topics. Moreover, the Legislature has expressly acknowledged the continuing police power of municipalities to regulate the sale of firearms. An example of the Legislature's expressly *declining* to divest municipalities of their police power to regulate firearm sales was discussed in *Suter*: "Penal Code sections 12070 and 12071 do impose state licensing requirements on persons wishing to sell, lease or transfer firearms, but we do not read their provisions as excluding local governments from imposing additional licensing requirements on such persons. Section 12070 prohibits a person from selling, leasing or transferring firearms unless such person has been issued a state license pursuant to section 12071. Section 12071 states the requirements for issuance of state licenses. Although section 12071 requires local governments to administer its provisions, it contains no language specifically prohibiting local governments from imposing their own licensing requirements. . . . Indeed, far

from prohibiting local licensing requirements, section 12071 expressly provides for that possibility, and further provides that in the event of certain conflicts between local requirements and state requirements, state requirements should give way. Subdivision (a)(1) defines a person licensed under section 12071 as a person who, among other things, 'has any *regulatory or business license, or licenses, required by local government.*' . . . Subdivision (a)(6) requires the state license to be in one of several forms, including: '(A) In the form prescribed by the Attorney General. (B) A regulatory or business license that states on its face "Valid for Retail Sales of Firearms" and is endorsed by the signature of the issuing authority. (C) A letter from the duly constituted licensing authority having primary jurisdiction for the applicant's intended business location *stating that the jurisdiction does not require any form of regulatory or business license or does not otherwise restrict or regulate the sale of firearms.*' . . . Subdivision (d) authorizes local licensing authorities to grant exemptions from compliance with section 12071's provisions regulating the storage of firearms 'if the licensee is unable to comply with those requirements because of *local ordinances, covenants, lease conditions, or similar circumstances* not under the control of the licensee.' " (*Suter v. City of Lafayette, supra*, 57 Cal.App.4th at pp. 1120-1121.) The *Suter* court concluded: "These provisions would be meaningless if local agencies have no authority to require their own regulatory or business licenses, or otherwise to restrict or regulate the sale of firearms. *There can be no implied preemption of an area where state law expressly allows supplementary local legislation.* (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376, 394 . . . .)" (*Suter, supra*, 57 Cal.App.4th at p. 1121, italics added.)

Plaintiffs correctly argue that the code sections cited in *Suter* do not expressly *grant* to municipalities the unfettered power "to regulate gun sales however they wish." This argument, however, is of no help to plaintiffs. As noted at the outset of this analysis, a municipality's police power to regulate firearms is not derived from statute, but rather from the California Constitution. The relevant question is not whether a statute *grants* the City a power, but whether a statute *deprives* the City of a power already bestowed upon the City by the Constitution.

In view of the observations above, and the clear record that the Legislature has carefully avoided a blanket preemption, there can hardly be a finding of implied preemption here, not even under the third alternative indicator of intent noted in *Sherwin-Williams*. This third indicator of intent might suggest a legislative intent to preempt when the subject matter is partially covered by state law and the adverse effects of a local ordinance on transient citizens

outweigh the possible benefit to the locality. There has been no serious attempt to establish that this test establishes an implied preemption in this case. (Cf. *Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th at p. 1121 ["There can be no implied preemption of an area where state law expressly allows supplementary local legislation."].) As the court stated in *Suter*: "Laws designed to control the sale, use or possession of firearms in a particular community have very little impact on transient citizens, indeed, far less than other laws that have withstood preemption challenges" and "[w]e conclude that state law does not preempt the broad field of sales of firearms or regulation of firearm dealers." (*Suter, supra*, 57 Cal.App.4th at pp. 1119, 1122; cf., *Sherwin-Williams Co.* v. *City of Los Angeles, supra*, 4 Cal.4th 893, 906 [retail display of aerosol paint and broad-tipped marker pens not a matter in which transient citizens are "peculiarly concerned," as they might be in regulation of traffic or registration of criminals].) Moreover, and most importantly, each of the three tests specified in *Sherwin-Williams* is an "indicia of intent." (*Sherwin-Williams Co., supra*, 4 Cal.4th at p. 898.) It is the *intent* of the Legislature that is controlling. Nothing has been presented to suggest that the Legislature implicitly intended to preempt this field notwithstanding the clear record of the Legislature's care not to preempt.

### E. *The opinions of the Legislative Counsel.*

Plaintiff cites two opinions from the Legislative Counsel. The first opinion, filed March 2, 1982, dealing with San Francisco Ordinance No. 49.78, considers a proposed outright ban on the sale or possession of handguns. The Legislative Counsel concludes that the Legislature's regulation of licensing of retail sellers of concealable firearms, registration of the sales of those firearms, regulation of private party transactions, and licensing of those authorized to carry concealable firearms ". . . has established the rights to sell, purchase, and be licensed to carry concealable firearms, subject to certain conditions." The Legislative Counsel's opinion is that the combination of the expression of preemptive intent in Government Code section 53071 and the existing Penal Code sections "on the sale and registration of firearms" "causes the field of registration or licensing of firearms, including the sale of concealable firearms, to be preempted by the state." Because the Legislature has authorized the possession and carrying of concealable weapons under certain circumstances, the Legislative Counsel concludes the Legislature has "placed it beyond the power of a city to prohibit the possession of concealable firearms."

The ordinance involved in the instant case does not ban possession of any handgun, but instead bans the sale of a limited category of handguns within

city limits. The instant case is therefore not the scenario evaluated in the Legislative Counsel's opinion. Moreover, The Legislative Counsel's opinion that the field of licensing and registration necessarily encompasses sale has been rejected by subsequent case law (see, e.g., *Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th 1109), is inconsistent with the Legislature's express reference to "sales" in declaring its preemptive intent in connection with imitation firearms, and is inconsistent with the Legislature's action in preserving local regulation of firearms sales in Penal Code section 12071. (See, e.g., *Suter*, *supra*, 57 Cal.App.4th at p. 1121 ["These provisions would be meaningless if local agencies have no authority to require their own regulatory or business licenses, or otherwise to restrict or regulate the sale of firearms. There can be no implied preemption of an area where state law expressly allows supplementary local legislation."].)

The second Legislative Counsel opinion, filed November 30, 1995, entitled Firearms: Local Ordinance No. 33428, considers specifically whether an "ordinance that prohibits the sale of handguns known as 'Saturday Night Specials'" would be valid. The Legislative Counsel first finds that "there is no prohibition on, nor any express authorization for, the sale of Saturday night specials or other concealable firearms [in state law]. Hence, we do not find a direct conflict between any state law and a local ordinance prohibiting the sale of Saturday night specials." The Legislative Counsel adds that "the state has not expressly preempted all local regulation involving firearms." The opinion continues, however, to opine that the various state statutes regarding the licensing of firearm dealers, restrictions on the transfer of firearms to minors, and registration of firearms, plus the statutes preempting narrow areas of firearms regulation (discussed above), etc., "shows a sufficiently patterned approach to the subject matter to indicate that the Legislature intended to make the subject one of statewide concern. [Citations.] Although it may be contended that by authorizing local governments to issue licenses to sell firearms at retail and by permitting local government to restrict and regulate the sale of firearms at retail, the state has not preempted the subject of sales and transfers of concealable firearms no matter how extensive the regulation at the state level. [*sic*] This argument has some merit. However, in our view, *the authority granted to local government* to restrict and regulate licensees with respect to the retail sale of firearms does not *include the authority* to prohibit the sale of Saturday night specials or any other type of concealable firearms." (Italics added.)

This opinion approaches the question of preemption in an odd way. Every city initially has the basic police power to regulate the sale of firearms within its borders by virtue of the California Constitution. (Cal. Const., art.

XI, § 7.) A city does not possess such power because the Legislature has "granted" that power to the city by statute, but rather because the City possesses such power as a matter of constitutional law. A claim of implied preemption raises the question of whether a state statute has *taken away* some portion of the constitutional police power the city would otherwise enjoy, not whether a state statute has impliedly *granted* some power to a city. The Legislative Counsel's opinion approaches the issue as if the question were whether the Legislature had affirmatively *granted* to the City the power to regulate handgun sales. This odd reverse-direction approach deprives the analysis of merit.

The opinion proceeds to opine that Penal Code section 12071, subdivision (a) (which *allows* local governments to "restrict and regulate the sale of firearms") means that "the sale of firearms that are not expressly prohibited by state law is lawful under state law." It must initially be acknowledged as impeccably true that something that is not prohibited by state law is lawful under state law, because under our system of law this is a simple tautology.[6] Such a tautological observation, however, is hardly a firm foundation for an analysis of what the Legislature impliedly intended, but for some reason did not expressly state. The Legislative Counsel's opinion nevertheless builds on this tautology to opine that "although the state regulatory framework includes an aspect of local regulation and a degree of deference to local concerns with respect to the regulation of licensees [gun dealers] in the sale of firearms under Section 12071, the state framework indicates an intent by the Legislature that sales of firearms that are not expressly prohibited by state law are lawful *and shall not be prohibited at a local level.*" (Italics added.) The italicized portion is simply added as a bald conclusion. No authority or further explanation is offered. Certainly the Legislature could achieve this preemptive result simply by so stating, but this is something the Legislature has carefully avoided.

The Legislative Counsel's opinion goes on to evaluate a "more important" factor relating to "whether state law has impliedly preempted local government from prohibiting the sale of Saturday night specials," that factor being "whether there is a qualified statutory right or privilege in section 12026 [generally precluding a requirement of a permit or license to purchase a concealable firearm or to possess a concealable firearm on private property] to purchase a concealable firearm [and whether this qualified statutory right

---

[6]Due process requires notice of illegality before conduct can be punished, and the ex post facto clause prohibits after-the-fact criminalization. Thus the general structure of our law is that everything is legal unless and until a law prohibiting it is enacted.

or privilege to purchase a concealable firearm] implies that the sale and transfer of concealable firearms that are not expressly prohibited by state law is *authorized* and lawful under state law." (Italics added.) Analogizing to the statement in *Doe* v. *City and County of San Francisco, supra,* 136 Cal.App.3d at page 518, that "It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession," the Legislative Counsel concludes that "we think that a court would similarly interpret the requirement in Section 12026 that no permit or license shall be required to purchase a concealable firearm as implying that purchasing a Saturday night special or any other type of concealable firearm not expressly prohibited by state law is lawful under state law." Again, it is no doubt tautologically true that something that is not prohibited by state law is lawful under state law, but the question here is whether the Legislature intended to strip local governments of their constitutional power to ban the local sale of firearms which the local governments believe are causing a particular problem within their borders.

The City cites the fact that Penal Code section 12026, subdivision (b), as amended in 1995, now states that no permit or license shall be required for a person to purchase or possess in the home, etc., "*a*" pistol, revolver, etc., rather than "*any*" pistol, revolver, etc. as was stated in the prior statute. The City argues that this change was intended to make clear that, contrary to the Legislative Counsel's opinion, the statute was not intended to provide a state "authorization" to purchase any type of firearm not outlawed under state law. As a general rule it is true that statutes should be construed to give effect to every word or provision (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 [172 Cal.Rptr. 194, 624 P.2d 244]), and it may be that the intent of the change from "any" to "a" was, as the City argues, to make clear that the statute does not preempt local regulation of specific and limited categories of handguns. We need not rely on this analysis, however. There is no basis for a conclusion that Penal Code section 12026 was intended to create a "right" or to confer the "authority" to take any action (such as purchasing an SNS) for which a license or permit may not be required. The words of the statute are words of proscription and limitation upon local governments, not words granting a right or authority to members of the public. (See, e.g., *Suter* v. *City of Lafayette, supra,* 57 Cal.App.4th at p. 1127 (interpreting Pen. Code, § 12072) ["The Penal Code, however, establishes a *limitation*, not a right."].) No authority has been cited for the proposition that a statute prohibiting a permit requirement can be construed as intended to create a broad enforceable right to purchase any type of handgun not specifically outlawed by state law. Again, the Legislature could expressly create such a right, but has not.

F. *The opinion of the Attorney General's office.*

Plaintiffs also rely upon an opinion from the Attorney General's office, 77 Ops.Cal.Atty.Gen. 147 (1994). Plaintiffs' reliance on this opinion is misplaced, because the opinion is not directed to the instant subject of firearms sales. Instead it concerns a related but different question of whether a municipality can ban the sale of certain types of *ammunition.* The opinion does, however, without detailed analysis, volunteer this commentary regarding firearms sales: "Regarding the area of firearms sales, we find that the Legislature has enacted a comprehensive and detailed regulatory scheme [Penal Code sections 12070-12084] which requires the licensing of firearms dealers, places numerous restrictions on firearms sales, and mandates the furnishing of identification information by each purchaser. The state has so thoroughly occupied this field that we have no doubt that regulating firearms sales is beyond the reach of local governments. (See *Fisher* v. *City of Berkeley* [(1984)] 37 Cal.3d [644,] 707-708 [209 Cal.Rptr. 682, 693 P.2d 261].) Cities and counties have been charged with the execution of the state's program for the licensing of firearms dealers, but their role is ministerial in nature." (77 Ops.Cal.Atty.Gen. at p. 150, italics omitted, citing Pen. Code, § 12071.)

This opinion by the Attorney General's office about *ammunition* sales is not persuasive on the instant issue of *firearms* sales for several reasons. First, the opinion was rendered without the benefit of the analysis in *Suter* v. *City of Lafayette, supra,* 57 Cal.App.4th 1109, which carefully reviewed the history of legislative enactment, judicial interpretation, and legislative response in this area. Second, as noted in *Suter, supra,* at pages 1121-1122, the question being answered by the Attorney General's office was a different question, one concerning the sale of certain types of *ammunition.* Hence the opinion does not focus on the considerations pertinent to the issue of the sale of *firearms.* For this reason, the *Suter* court dismissed the opinion's comment quoted above regarding firearms sales as "unpersuasive dicta, unnecessary to the Attorney General's conclusion." (*Id.* at p. 1121.) Third, since the opinion is not focused on the issue of firearms sales, it does not consider how an implied preemption of regulation of firearms sales can be found in the face of the record discussed above, which demonstrates careful legislative avoidance of such a preemption. We therefore agree with *Suter* that the opinion has little persuasive force in the present context.

The Attorney General is the state's chief law enforcement officer and, as the opinion of his office suggests, uniform statewide regulation of firearm

sales might be preferable for law enforcement administrative reasons. It is no doubt within the authority of the Legislature to require uniformity by expressly preempting local regulation. However, instead of preempting, the Legislature has carefully avoided preempting. Thus uniformity through preemption must come, if at all, through further legislative action.

G. *The statute does not violate constitutional equal protection or due process guaranties.*

Plaintiffs contend that the ordinance constitutes a violation of equal protection and due process. However, nothing in their arguments identifies any manner in which the ordinance violates any constitutional provision.

The Fourteenth Amendment to the United States Constitution prohibits a state from denying "to any *person* within its jurisdiction the equal protection of the laws." (Italics added.) Article I, section 7, subdivision (a) of the California Constitution provides that a "*person* may not be . . . denied equal protection of the laws . . ." (Italics added.) The general rule is that persons who are similarly situated in relevant respects must be treated equally by the law. Obviously, a handgun is not a person, and hence there is no constitutional compulsion for a state's laws to treat all handguns alike. Nevertheless, plaintiffs argue that "[b]y definition, equal protection is violated when adverse regulation is applied only to some, but not all guns . . . ." This is palpably incorrect. Treating different guns differently might theoretically be legally infirm for some reason, but not for violating the equal protection clauses of either the California Constitution or the United States Constitution. The equal protection clause simply does not protect guns from unequal legal treatment.

In other portions of their argument, plaintiffs move away from the argument that all guns must be treated equally to an argument that all people must be treated equally. Thus plaintiffs contend that "[t]he Ordinance treats makers and retailers of the banned guns, and persons who wish to buy them, dissimilarly to makers-retailers-prospective buyers of unbanned guns." This statement might be regarded as true in a certain sense, but even if it were so regarded, it has no significance from a constitutional equal protection perspective. Many laws treat manufacturers, retailers or purchasers of legal products differently from manufacturers, retailers or purchasers of prohibited products. These two groups are not similarly situated for constitutional purposes. For example, in many municipalities certain types of products (fireworks, for example) are prohibited. Applying plaintiffs' line of reasoning, these ordinances violate equal protection because they discriminate

between those who want to purchase fireworks in that municipality, and those who want to purchase some other product in that municipality. Plaintiffs' real complaint about the ordinance is not that it denies equal protection, but instead that it places SNS handguns into the prohibited product category.

In a more accurate sense, moreover, the two groups postulated by plaintiffs are not differentially treated—members of both groups are equally banned from purchasing an SNS handgun in the City. The ban applies equally to all persons, regardless of classifications such as race, sex, religion, etc. ▌ As the *Suter* court pointed out: " 'Equal protection is not denied simply because an ordinance treats one class of persons differently from another. Where there is no suspect classification, and purely economic interests are involved, a municipality may impose any distinction which bears some "rational relationship" to a legitimate public purpose. [Citation.] Courts consistently defer to legislative determinations as to the desirability of such distinctions. [Citation.] The ordinance will be upheld so long as the issue is " 'at least debatable.' " [Citation.]' [Citation.]" (*Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th at p. 1133.)

▌ Plaintiffs cite *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726 [114 Cal.Rptr. 460, 523 P.2d 260] for the proposition that *things* (specifically in *Cossack*, commercially run games), as opposed to *persons*, are protected by equal protection. In *Cossack*, without discussion or explanation and in apparent dictum, Justice McComb summarily stated that an ordinance which distinguished among various games (differentiating them as either games of chance or games of skill) would "violate equal protection . . . since there would be an arbitrary discrimination against the limited number of games of skill falling within its terms." (*Cossack*, *supra*, at p. 734.) In support of this proposition, *Cossack* cited only to the constitutional provisions requiring all similarly situated *persons* to be treated alike and to *Looff* v. *City of Long Beach* (1957) 153 Cal.App.2d 174 [314 P.2d 518]. In *Looff*, an ordinance regulating games was ruled unconstitutional. *Looff* unfortunately does not identify exactly what constitutional provision was supposedly violated by the ordinance there in question, but instead simply finds that "the ordinance is invalid in that it is discriminatory and not uniform in its application; that the classification is arbitrary in its nature and not founded upon nor supported by reason." (*Looff*, *supra*, at p. 185.) *Looff* is an unsatisfactory basis upon which to rely, inasmuch as *Looff*'s constitutional discussion neglected even to identify the constitutional provision supposedly violated. The discussion in *Looff* appears to have been a discussion of substantive due process, according to which a statute may be found invalid if purely irrational and arbitrary, rather than a discussion of equal protection.

(Cf., e.g., 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 481, pp. 668-669.) To the extent that *Cossack* is considered to hold that things (in addition to persons) are entitled to equal protection of the laws, it is inconsistent with the heavy weight of authority that the equal protection clauses of both the state and federal Constitutions protect persons, not things. (See, e.g., 8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 593 et seq., p. 44 et seq.)

No case has been cited or otherwise found treating *Cossack* as authority for the proposition that all things (such as perhaps all handguns) are entitled to equal protection of the laws, even though that is indeed what *Cossack* literally appears to say. Cases citing *Cossack* generally cite it as authority either for the proposition that statutes must be construed consistently with legislative intent or for the proposition that legislative history, surrounding circumstances, etc., must be considered in determining legislative intent. (See, e.g., *People* v. *Jeffers* (1987) 43 Cal.3d 984, 997 [239 Cal.Rptr. 886, 741 P.2d 1127]; *Harry Carian Sales* v. *Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 223 [216 Cal.Rptr. 688, 703 P.2d 27]; *Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 831 [196 Cal.Rptr. 38, 670 P.2d 1121]; *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787]; *Valley Circle Estates* v.. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 608 [189 Cal.Rptr. 871, 659 P.2d 1160].) Cases which cite *Cossack* in a constitutional context are generally cases involving due process issues. (See, e.g., *Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105 [151 Cal.Rptr. 580] [due process question concerning whether statute regulating slot machines was "unconstitutionally vague"]; *Amusing Sandwich, Inc.* v. *City of Palm Springs* (1985) 165 Cal.App.3d 1116 [211 Cal.Rptr. 911] [noting that *Cossack* was relied upon for an "equal protection" argument in a case involving regulation of video games, but discussing the issue in terms of substantive due process].) An issue of equal protection was raised in the firearm regulation context in *Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th 1109, but there the issue was whether the equal protection clause was violated by barring certain *persons* (minors) from gun stores unless accompanied by a parent. (*Suter*, *supra*, 57 Cal.App.4th 1109, 1132 et seq.)

We conclude that *Cossack* is merely an example of the type of error in language that on occasion inevitably creeps into case law as many thousands of cases are adjudicated over time, and that the court misspoke when it used the term "equal protection" instead of the term "substantive due process" in *Cossack*. This conclusion is buttressed by the treatment of *Cossack* by the legal commentators. If *Cossack* stood for the proposition that the equal

protection clause protected all things in addition to all people, it would be quite a prominent case for establishing that novel proposition. (See, e.g., 8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law § 591 et seq., p. 43 et seq. [equal protection covers *persons*].) Witkin's treatise does not even cite the *Cossack* decision, and no other commentator has been identified who believes that *Cossack* extended equal protection to things such as handguns.

Even assuming that there were some way that inanimate things such as handguns could be brought under the protection of the equal protection clause, plaintiff concedes that the ordinance would be subject to only minimal scrutiny. Thus the City may impose any distinction which bears some rational relationship to a legitimate public purpose. (*Suter* v. *City of Lafayette*, *supra*, 57 Cal.App.4th at p. 1116.) Whether one considers it wise or not, it cannot be considered irrational for a local legislator to have the opinion that limiting the sale of inexpensive handguns in the City could be beneficial to the City's residents. Plaintiffs' arguments regarding irrationality revolve around their opinion that the ready availability of SNS handguns would be beneficial to the City's residents. However, a mere difference of opinion on this point is not the equivalent of unconstitutional irrationality. (See, e.g., *Suter, supra*, 57 Cal.App.4th at p. 1128 ["because appellants complain that the ordinance was enacted for improper purposes, and that other legislation would have been preferable, we point out that courts ordinarily do not consider the motives behind legislation, including local legislation [citing, inter alia, *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 726 [119 Cal.Rptr. 631, 532 P.2d 495]], nor do they second-guess the wisdom of the legislation [citations]."].) Legislators are elected for the precise purpose of making such decisions.

The ordinance does exempt law enforcement and military service personnel in the discharge of their official duties. Although this exemption, involving *persons*, might theoretically implicate equal protection concerns, there is no basis upon which to find that the classifications made by the ordinance violate equal protection. Just as gun dealers and the public are not similarly situated with regard to the subject of the legislation, neither are dealers and law enforcement or military service personnel. Limiting the proscription to dealers is not an irrational method of addressing the concerns identified in the legislative findings. The City's decision to address the problem by focusing on the retail and wholesale sources of the weapons cannot be said to bear no rational relationship to a legitimate public purpose.

Plaintiffs' due process arguments are equally invalid. Much argumentation is offered on the point that SNS handguns are not dangerous, will help

individuals protect themselves, are not excessively used in crime, are beneficial because they are cheaper and thus more readily available to lower income persons, etc. Whether this argumentation is offered on the equal protection or due process theories, or exactly how these arguments might implicate due process, is not entirely clear. Yet the burden lies on plaintiffs to demonstrate the unconstitutionality of the statute they attack. (Cf. 7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 58, pp. 102-103 ["A legislative act is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity. . . ."].) It is clear that substantive due process requires a rational relationship between the objectives of a legislative enactment and the methods chosen to achieve those objectives. A line of substantive due process cases generally holds that the guaranty of due process in the Fifth and Fourteenth Amendments includes a "substantive" component that restricts infringement upon certain fundamental "liberty interests." (See, e.g., *Reno* v. *Flores* (1993) 507 U.S. 292, 302 [113 S.Ct. 1439, 1447, 123 L.Ed.2d 1].) The substantive due process doctrine thus acts as a limitation on unreasonable and arbitrary legislation. (7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 481, pp. 668-669; *People* v. *Kilborn* (1996) 41 Cal.App.4th 1325, 1328 [49 Cal.Rptr.2d 152] [" 'deprivation of a right is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation that is reasonably applied; that is, the law must have a reasonable and substantial relation to the object sought to be attained.' "].) The scope of the "substantive due process" concept is indefinite. ". . . the notions of fairness and reasonableness which make up the content of substantive due process . . . are too general to offer any definite test . . . ." (8 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 791, pp. 318-319.) Since there is no definite test to determine whether a statute complies with the "notions of fairness" which make up the concept of "substantive due process," and since there is no definite test to determine whether a statute is "unreasonable" or "arbitrary," courts must be cautious not to interfere with proper legislative judgment when considering claims of violation of substantive due process. Thus " '[s]ubstantive due process' analysis must begin with a careful description of the asserted right [allegedly infringed upon], for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " (*Reno* v. *Flores*, *supra*, 507 U.S. at p. 302 [113 S.Ct. at p. 1447].) " '. . . a Legislature does not violate due process so long as an enactment is . . . reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute.' " (*People* v. *Kilborn*,

*supra*, 41 Cal.App.4th at p. 1329, quoting from *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].)

Viewing plaintiffs' attacks on the ordinance from a substantive due process perspective, these attacks fail as a legal matter, whatever their merit may be in the arena of public policy debate. The exercise here is not to see whether a court might find plaintiffs' arguments more persuasive than those accepted by the City's legislators, but rather whether plaintiff can present evidence that the judgment of the City's elected legislators was wholly irrational. Since, by a large measure, the City's decision cannot be termed wholly irrational, the City's legislative decisions lie beyond the range of due process attack. As the trial court found: "The central issue is whether the Ordinance is rationally related to a legitimate governmental purpose. The Legislative History of the Ordinance demonstrates there was sufficient evidence before the City Council for rational legislators to believe the Ordinance was an appropriate public health and safety measure. [¶] The Association has presented evidence that the Ordinance is not proper or is it a good idea. [*sic*] Although much of this evidence is objectionable, if the Court assumes its admissibility, it does not create disputed material facts as to whether the Ordinance was a rational, legitimate means for addressing the stated harm."

In sum, the wisdom of the ordinance is not in issue, the burden of showing unconstitutionality falls on plaintiffs, plaintiffs have not met that burden, the statute (even if unwise) cannot be termed wholly irrational, and the constitutional arguments advanced by plaintiffs yield no identifiable constitutional infirmity. ■ "As a general rule, such ordinances will be upheld against constitutional challenge if they are reasonably related to promoting the health, safety, comfort and welfare of the public, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 . . . .)" (*Suter* v. *City of Lafayette, supra*, 57 Cal.App.4th at p. 1128.) ■ ". . . [O]rdinances regulating the sale of weapons need be scrutinized under no higher standard than that applied to ordinances regulating the sale of any other product. The ordinances at issue here therefore will be upheld if they are reasonably related to promoting the public health, safety, comfort and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to that purpose. Moreover, a reviewing court presumes that the ordinance in question is valid. Finally appellants, in arguing that [the City's] laws are invalid, have the burden of 'surmounting all possible intendments, presumptions, and reasonable doubts indulged in favor of [their] validity.' (*Sonoma County Organization etc. Employees* v. *County*

*of Sonoma* (1991) 1 Cal.App.4th 267, 275 . . . .)" (*Suter, supra,* 57 Cal.App.4th at p. 1130.)

## III. DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

Boren, P. J., and Nott, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 22, 1998.